the examples of cases that have invoked the two-tier Carter standard but have not factually explored whether a work of visual art was of recognized stature, see Hunter v. Squirrel Hill Assocs., 413 F. Supp. 517 (E.D. Pa. 2005) (dismissing complaint on statute of limitations grounds but recognizing that complaint properly alleged a VARA claim under the Carter test); Phillips v. Pembroke Real Estate, Inc., 288 F. Supp. 2d 89 (D. Mass. 2003) (granting an injunction under a moral rights state law, and declaring that a park as a whole is not a work of visual art entitled to VARA protection); English v. BFC&R East 11th Street LLC, 1997 WL 746444 (S.D.N.Y. 1997) ("VARA is inapplicable" to illegally placed graffiti); Pavia v. 1120 Ave. of the Americas Assoc., 901 F. Supp. 620 (S.D.N.Y. 1995) (finding the VARA claims time-barred). sculpture was "an interesting and aesthetic stimulating configuration of forms and structures," and an article by the visual arts editor of the The Indianapolis News describing the sculpture as "[g]leaming, clean and abstract, yet domestic in scale and reference, "which " unites the area, providing a nexus, a marker, a designation, an identity and, presumably, a point of pride." Id. at 613.

In Pollara v. Seymour, 206 F. Supp. 2d 333 (N.D.N.Y. 2002), Judge Hurd held, as a matter of law, after a bench trial, that even under the Carter formulation, the particular mural in that case was not of recognized stature because "while plaintiff's work was unquestionably meritorious," it was "intended solely as a display piece for a one-time event." Id. at 336. The court reasoned, therefore, that "[i]t defies the underlying purpose of VARA to assume that the statute was intended to protect works of artistic merit without regard to whether such works were ever intended as 'art' or whether they were intended to be displayed as art or were otherwise intended to be preserved for posterity as works of artistic merit." Id. And in Scott v. Dixon, 309 F. Supp. 2d 395 (E.D.N.Y. 2004), the court dismissed plaintiff's VARA suit on the merits after a bench trial because the artist's sculpture had been commissioned for placement in the defendants' private backyard, which was obscured by hedges from public view. The court reasoned, therefore, that under VARA "it is not enough that works of art authored by the plaintiff, other than the work sought to be protected, have achieved [recognized] stature. Instead, it is the artwork that is the subject of the litigation that must have acquired this stature." Id. at 406. Thus, "while the Sculpture may have had artistic merit, it was not a work of recognized stature within the meaning of VARA" since it had never been exposed to the public. Id. 9

In Cohen vs. G.M. Realty, 13-CV-05612 (FB) (RLM), 15-CV-3230 (FB) (RLM) (S.D.N.Y. 2018) Judge Block held that plaintiffs' aerosol art comes under VARA's protection as works of "visual art", Cohen I, 988 F. Supp. 2d at 216, and that, under § 106A(a)(3)(B), VARA "gives the `author of a work of visual art' the right to sue to prevent the destruction of [the] work if it is one of `recognized stature,'" Cohen I, 988 F. Supp. 2d at 215. VARA also permits the artist to seek monetary damages under § 106A(a)(3)(A) if the work was distorted, mutilated, or otherwise modified to the prejudice of the artist's honor or reputation.

Section 113(d)(1) of VARA provides that

In a case in which —

(A) a work of visual art has been incorporated in or made part of a building in such a

way that removing the work from the building will cause the destruction, distortion, mutilation, or other modification of the work as described in section 106A(a)(3), and (B) the author consented to the installation of the work in the building either before the effective date set forth in section 610(a) of the Visual Artists Rights Act of 1990, or in a written instrument executed on or after such effective date that is signed by the owner of the building and the author and that specifies that installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal, then the rights conferred by paragraphs (2) and (3) of section 106A(a) shall not apply.2

Section 113(d)(2) provides, in part, that

If the owner of a building wishes to remove a work of visual art which is a part of such building and which can be removed from the building without the destruction, mutilation, or other modification of the work as described in section 106A(a)(3), the author's rights under paragraphs (2) and (3) of section 106A(a) shall apply unless— (A) the owner has made a diligent, good faith attempt without success to notify the author of the owner's intended action affecting the work of visual art, or (B) the owner did provide such notice in writing and the person so notified failed, within 90 days after receiving such notice, either to remove the work or to pay for its removal.

Thus, § 113(d) provides for two possibilities when a protected work of art has been integrated into a building subsequent to June 1, 1991, VARA's effective date. "Section 113(d)(1) deals with works of visual art that cannot be removed without causing destruction, mutilation, or other modifications to the work. Section 113(d)(2) deals with works of visual art that can be removed without causing such harm." 5 William F. Patry, Patry on Copyright § 16:32 (2017) (" Patry ") (emphasis added).
Under § 113(d)(1), if a work is not removable without destroying, mutilating, distorting, or otherwise modifying the work, the artist's VARA right of integrity under § 106A(3) attach, and the artist may sue to prevent the destruction of the work unless the right is waived "in a written instrument . . . that is signed by the owner of the building and the author and that specifies that installation of the work may subject the work to destruction, distortion, mutilation, or other modification, by reason of its removal." § 113(d)(1)(B) (emphasis added).

Under § 113(d)(2), if a work is removable without destroying, mutilating, distorting, or otherwise modifying it, VARA gives the artist the opportunity to salvage the work upon receipt of a 90 days' written notice from the building owner of the owner's "intended action affecting the work of visual art." 17 U.S.C. §§ 113(d)(2)(A)-(B). If the artist fails to remove or pay for the removal of the works within the 90 days —or if the owner could not notify the artist after making a "good faith effort," 17 U.S.C. § 113(d)(2)(A)—the artist's VARA rights are deemed waived for the removable work, and the owner may destroy them without consequences.

"Damages that may be awarded for the violation of the artist's rights of attribution and integrity under § 106A(a)(3) are the same that apply for copyright infringement, namely actual (including profits) and statutory. 17 U.S.C. § 504(a). As the House Judiciary Committee Report explained:

Section 6(a) of the bill simply amends section 501(a) of title 17 to add those authors covered by new section 106A . . . . It thereby makes all title 17 remedies [except criminal sanctions] available to those authors. . . . [VARA] thereby provides for monetary damages, and for injunctive relief to prevent future harm. The same standards that the courts presently use to determine whether such relief is appropriate for violations of section 106 rights will apply to violations of section 106A rights as well." H.R. Rep. No. 101-514, at 21-22 (1990) (emphasis added).

"There is no limit to the amount of actual damages for each work, but statutory damages for each may be "not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If, however, the plaintiff "sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages" for each work "to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). The plaintiff is not entitled to both actual and statutory damages but must elect one or the other "before final judgment is rendered [.]" 17 U.S.C. § 504(c)(1).

"A copyright holder seeking to prove that a copier's infringement was willful must show that the infringer `had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility.'" Bryant v. Media Right Prods., 603 F.3d 135, 143 (2d Cir. 2010) (quoting Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993)). "This knowledge may be `actual or constructive.'" N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). "In other words, it need not be proven directly but may be inferred from the defendant's conduct." Id.
"A copyright holder seeking to prove that a copier's infringement was willful must show that the infringer `had knowledge that its conduct represented infringement or . . . recklessly disregarded the possibility.'" Bryant v. Media Right Prods., 603 F.3d 135, 143 (2d Cir. 2010) (quoting Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993)). "This knowledge may be `actual or constructive.'" N.A.S. Import, Corp. v. Chenson Enters., Inc., 968 F.2d 250, 252 (2d Cir. 1992). "In other words, it need not be proven directly but may be inferred from the defendant's conduct." Id.

"When determining the amount of statutory damages to award for copyright infringement, courts consider: (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." Bryant, 603 F.3d at 144.

"Because defendants acted willfully in destroying Part II of Plaintiff's 9/11 mural project, this factor weighs in favor of a high statutory damages award. The value of the mural project to the artists career is significant, and its loss, though difficult to quantify, precludes future opportunities and acclaim. Therefore, this factor also supports a significant statutory damages award. This is perhaps the most important factor in this case. Without a significant statutory damages award, the preservative goals of VARA cannot be met. If potential infringers believe that they can violate VARA at will and escape liability because plaintiffs are not able to provide a reliable financial valuation for their works, VARA will have no teeth. It will simply be cost-effective for infringers to violate the statute. This would not further its preservative goals. The plaintiffs

conducted themselves with dignity, maturity, respect, and at all times within the law. Therefore, this factor also cuts heavily in favor of a high statutory damages award."

Judge Block ordered: Collectively, all five relevant factors support the maximum award of statutory damages. Therefore, the Court awards $150,000 for each of the 45 works, for a total statutory damages award of $6,750,000."

## Conclusion

There was never a waiver, allowing destruction or removal of Plaintiff's mural projects, in any email or verbal contractual agreement made with defendants. Mr. Mulvey, USPS East Coast facilities manager posted a notice regarding special circumstances affecting the closing of the Peter Stuyvesant USPS. The law allows the artist, 90 days to remove their artwork, after being notified by the building owner. Plaintiff followed USPS protocol with a letter informing Mr. Mulvey of his willingness to remove the mural project, from the walls at the closed Peter Stuyvesant USPS. When he got no response he wrote the defendants a second time. In 2014, Plaintiff was summoned to the 23rd Street USPS Station and asked to remove his mural project which defendants had removed, mutilated and destroyed; without contacting he artist.

Part II: Up and Down the River. 2010, consisted of 14-40 X 60 inch canvas prints mounted on stretchers. The work was organized on opposing walls, into 2-6 panel composite photographic images and a single panel was installed in the front. The work included signage featuring the artists' name, title and project information. Starting in 2014 and continuing to the present, Plaintiff first proposed reincorporating the murals or the installation of a different photographic project; for the 14th Street USPS Service Center. When this was denied, in 2015, he requested a meeting to discuss the destruction of the Part II murals. Plaintiff was bashful about communications, fearing his complaining, could jeopardize Part I, of his 9/11 mural project. Plaintiff attempted to enlist friendly Peter Cooper Station postal workers to help him be heard, but they owed allegiance to the USPS. In 2017, all communication ended.

Plaintiff invoked the VARA complaint to compel the USPS to preserve his 9/11 mural project and to allow the incorporation of a recreation of Part II. The original hi-resolution digital .TIF files, used in the creation of the Part II murals, were lost in a 2016 computer crash. Plaintiff found the original maquette, shown to Mr. Morales, Peter Stuyvesant USPS manager, in 2010. Things were working with Ms. Doud toward a solution; when without reason or warning, the USPS decided to reinstitute their motion to dismiss.

Plaintiff investigated Public Art in the East Village neighborhood. Only 300 yards, to the south, of my murals at the Peter Cooper USPS Station, he found three recent additions. Minskoff Equities has developed 51 Astor Place as the hub of a Tech Corridor connecting 4th Avenue and Park Avenue South. In the lobby of 51 Astor Place, stands Jeff Koons' 20 foot tall red twisted wiener dog; like a clown would make with a balloon, for a child at a birthday party. Made of metal and with a price tag of $58,000,000. Outside in the Public Space at 51 Astor Place, stands a Keith Haring posthumous self-portrait 8 foot green metal sculpture; which looks like the green cell animation clay cartoon character "Gumby". Across the street attached to the portico of the Great Hall

of the Cooper Union, are silver steel reinforcements and chain link fencing. What resembles a construction barricade, to prevent masonry from falling on pedestrians, is part of Chinese artist Ai Wei Wei "Walls" project. The artist writes about his project, "....they do form a new physical – and metaphorical – barrier. That suggests that the logic of social division is often opportunistic and incremental, emerging from and adapting itself to existing conditions."

Facebook's Mark Zuckerberg announced he is moving away from courting celebrity to focus on Facebook community content. In New York City, recognized works of Public Art are valuable whether the artist is creating status symbols for the Art Hegemony or do-it-yourself artists; armed with spray cans and digital cameras. Peter Cooper USPS is not a landmarked building. For the willful, intentional and grossly negligent destruction of Part II; statutory damages commensurate with Cohen vs. G.M. Realty, should be imposed on the United States of American USPS and Plaintiff pleads for a determination about the future existence of Part I.

Sincerely,

*Addison Thompson*

Addison Thompson
Photographer/Plaintiff, Pro SE
2/23/2018