UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                       :
ADDISON THOMPSON,                                      :
                                                       :
                                   Plaintiff,          :        17 Civ. 5017 (KPF)
                                                       :
                  v.                                   :        OPINION AND ORDER
                                                       :
UNITED STATES OF AMERICA,                              :
UNITED STATES POSTAL SERVICE,                          :
                                                       :
                                   Defendants.         :
                                                       :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: July 11, 2018

KATHERINE POLK FAILLA, District Judge[1]:

　　Plaintiff Addison Thompson, proceeding *pro se*, seeks relief against the

United States and the United States Postal Service ("USPS") (collectively,

"Defendants") for the removal and improper storage of his artwork.  Plaintiff

alleges that in 2008, the USPS agreed to display the first installment of his two-

part 9/11 memorial photographic mural ("Part I") at the Peter Cooper Post

Office ("Cooper Post Office") in New York City.  Plaintiff further alleges that in

2010, the USPS erected the second installment of his mural ("Part II") at the

nearby Peter Stuyvesant Post Office ("Stuyvesant Post Office," and together

with the Cooper Post Office, the "Post Offices").  Sometime in 2013, the

Stuyvesant Post Office relocated, during which the components of Part II —

consisting of Plaintiff's photographic images printed on canvas — were removed

---

[1]    Mackenzie Humble, a rising second-year student at Columbia Law School and an intern
in my Chambers, provided substantial assistance in researching and drafting this
Opinion.

from the walls and stored in the basement of the new facility. The photographs were allegedly damaged through the process of their removal and storage, leading Plaintiff to seek relief under the Visual Artists Rights Act of 1990 ("VARA"), 17 U.S.C. § 106A. Given Plaintiff's *pro se* status and the solicitude required on account thereof, the Court construes the pleadings also to allege claims under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500-596, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.

Pending before the Court is Defendants' motion to dismiss. For the reasons set forth in the remainder of this Opinion, Defendants are correct that the Court lacks subject matter jurisdiction to hear Plaintiff's claims. Accordingly, the Court grants Defendants' motion in full.

## BACKGROUND

### A.    Factual Background[2]

Plaintiff's grievances stem from the alleged damage to Part II of a two-part photographic mural created to memorialize the terrorist attacks of

---

[2]    The facts in this section are drawn from the Complaint ("Compl." (Dkt. #2)), filed on June 30, 2017, and, in light of Plaintiff's *pro se* status, from Plaintiff's opposition brief. *See Nielsen* v. *Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("[A] *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."); *Walker* v. *Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

In adjudicating the motion to dismiss, the Court accepts as true the well-pleaded allegations in the Complaint. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss, dated February 9, 2018, as "Def. Br." (Dkt. #23); Plaintiff's opposition brief, dated February 27, 2018, as "Pl. Opp." (Dkt. #25); Defendants' reply brief, dated March 23, 2018, as "Def. Reply" (Dkt. #26); Defendants' supplemental letter brief, dated June 26, 2018, and filed in response to the Court's June 14, 2018 Order (Dkt. #30), as "Def. Supp." (Dkt. #33); and Plaintiff's supplemental letter brief, dated June 27, 2018, as "Pl. Supp." (Dkt. #35). Because the Complaint

September 11, 2001. Each Part illustrates an individual panoramic landscape, with Part I depicting two broken stone towers and Part II conveying a scene in the Hudson River Valley, contrasting "the dramatic shadows cast by leaves as a fireworks of light symbolic of the 9/11 event." (Compl. 2). In 2008, Plaintiff verbally agreed with the USPS to install the first part of his "9/11 memorial photographic composite mural project" at the Cooper Post Office, consisting of 12 "high-resolution digital images printed on canvas to mimic the appearance of a painting." (*Id.* at 1-2). Two years later, in 2010, Plaintiff agreed to install a second part of the mural project, consisting of 13 similarly produced digital images printed on canvas, in the Stuyvesant Post Office. (Pl. Opp. 1-2). Plaintiff further agreed to "remove the murals, upon request." (*Id.* at 2).[3]

In 2011, the Stuyvesant Post Office relocated to "a smaller customer service center." (Compl. 2). Following the relocation, Plaintiff twice attempted to contact a facilities manager to inquire into the whereabouts of his mural.

---

does not have numbered paragraphs, the Court instead cites to the relevant page numbers.

[3] The Court notes that, though Plaintiff uses the term "agree" to describe his commitment to remove the murals upon request, Plaintiff has not identified, and the Court cannot discern, any legally binding contract between the parties. The Complaint states that Plaintiff "donated and installed" his mural project. (Compl. 1). Plaintiff committed to "remove the murals, upon request" (Pl. Opp. 2), but that commitment does not appear to have been made with any bargained-for consideration, *see Startech, Inc.* v. *VSA ARTS*, 126 F. Supp. 2d 234, 237 (S.D.N.Y. 2000) ("Consideration is defined as either a bargained for gain or advantage to the promisee or a bargained for legal detriment or disadvantage to the promisor."). That is, there does not appear to have been any gain to Plaintiff or any disadvantage to the USPS in connection with Plaintiff's promise to remove the murals upon request. Though the USPS obtained Plaintiff's contact information through the "permissions process" (Compl. 3), it did not promise to contact Plaintiff. Even if it had promised as much, nothing in the pleadings suggests that such a commitment by the USPS would constitute a quid pro quo, or consideration, for Plaintiff's own commitment to remove the murals upon request. For these reasons, the Complaint does not allege a viable breach of contract claim against the Defendants.

(*Id.* at 3).  He received no response.  (*Id.*).  Plaintiff does not specify when he discovered the fate of his mural; however, at some point in 2013 or 2014, Plaintiff learned that his photographs were being kept in the basement of the 23rd Street Post Office, bound and placed in cloth Postal Service carts.  (*Id.*). Plaintiff thereafter "attempted to make contact with the Postal Inspector to discuss the removal" of his photographs.  (*Id.*).  Plaintiff wrote to the 23rd Street Post Office directly to request permission "to recreate the murals or create new murals."  (*Id.* at 3).  His request was denied, but Plaintiff was "invited to recover his mural[ ] in the Post Office basement."  (*Id.*).  After finding an incomplete collection of the photographs in the basement "damaged on the front and torn on the back," Plaintiff refused to accept them.  (*Id.*).

In 2015 and 2016, Plaintiff continued to communicate with the USPS — this time online — regarding the damaged mural.  (Compl. 4).  Plaintiff's initial efforts to contact the USPS through his online account succeeded, and he was eventually persuaded to direct his queries to the 23rd Street Post Office following the 2016 holiday season.  (*Id.*).  In January 2017, Plaintiff attempted to reinitiate contact with the 23rd Street Post Office, but his overture was met with silence, precipitating the present suit.  (*Id.*).  Throughout, Plaintiff has kept in his possession the negatives of the photographs at issue, and with them the ability to reprint the photographs and recreate the damaged murals. (*See* Dkt. #17 at 5:15-17 ("And I'm not so mad that they're destroyed because, you know, they're photographic.  So I can just reprint them because I have the original negatives[.]")).

**B.     Procedural Background**

On June 30, 2017, Plaintiff filed a Complaint against the USPS and the United States.  (Dkt. #2).  Defendants filed a motion to dismiss the Complaint on October 2, 2017.  (Dkt. #8).  Because they did so without having first filed a pre-motion letter, as required under Rule 4A of the Court's Individual Rules of Practice in Civil Cases, the Court terminated that motion.  (Dkt. #11).  Shortly thereafter, on October 6, 2017, Defendants filed a letter requesting a pre-motion conference (Dkt. #12), which conference was held on November 15, 2017 (*see* Dkt. #17 (transcript of conference)).  The Court granted Defendants 60 days to determine whether they could accommodate Plaintiff's requests to reinstall his photographic mural.  (*Id.*).  On January 11, 2018, Defendants filed a letter declining to do so.  (Dkt. #20).

The Court issued a briefing schedule for Defendants' motion to dismiss directing Defendants to file their opening brief by February 9, 2018, Plaintiff to file his opposition brief by March 16, 2018, and Defendants to file their reply by March 23, 2018.  (Dkt. #21).  All briefs were timely filed.  (Dkt. #23, 25, 26).

**DISCUSSION**

**A.     Applicable Law**

**1.     Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)**

In considering both a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, "the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has subject matter

jurisdiction necessary to consider the merits of the action." *Wong* v. *CKX, Inc.*, 890 F. Supp. 2d 411, 414-15 (S.D.N.Y. 2012). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). Ultimately, a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*

In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)). Given Plaintiff's *pro se* status, he is entitled to a special solicitude, one that requires "liberal construction of pleadings, [and] motion papers" to avoid the "forfeit[ure] [of] important rights through inadvertence" occasioned by *pro se* litigants' general inexperience and lack of formal legal training. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Therefore, pleadings and submissions drafted by *pro se* litigants must be read "to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)). A district court must also "grant a *pro se* litigant leave to amend 'at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Ganley* v. *City of New York*, — F. App'x —, No. 17-1704, 2018 WL 2383533, at *2 (2d

Cir. May 25, 2018) (summary order) (quoting *Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

## 2. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Rule 12(b)(6), a court should "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is not, however, obligated to accept legal conclusions disguised as factual allegations. *See Rolon* v. *Hennenman*, 517 F.3d 140, 148-49 (2d Cir. 2008); *see also Iqbal*, 556 U.S. at 678.

"While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.     Analysis**

Defendants contend that the Court lacks subject matter jurisdiction over Plaintiff's claims. They claim that "Plaintiff has identified no applicable waiver of the United States' sovereign immunity, either under [VARA] … or under any other statute." (Def. Reply 1). And "[i]n the absence of any such waiver, the Court lacks subject matter jurisdiction, and Plaintiff's Complaint must be dismissed." (*Id.*).

The Court has arrived at similar conclusions. The Court lacks jurisdiction over Plaintiff's VARA claim because the statute does not contain an affirmative waiver of sovereign immunity. It lacks jurisdiction over Plaintiff's APA claim because Defendants are specifically exempt from the APA's waiver of sovereign immunity. Finally, it lacks jurisdiction over Plaintiff's FTCA claim because Plaintiff has failed to exhaust his administrative remedies, and any such remedy is now time-barred. Because the Court lacks subject matter jurisdiction over Plaintiff's claims, it will not address Defendants' Rule 12(b)(6) arguments. *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-386 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further.").

### 1. The Court Lacks Subject Matter Jurisdiction over Plaintiff's VARA Claim

When the federal government or a federal agency is sued, the doctrine of sovereign immunity may present a jurisdictional bar. *See FDIC* v. *Meyer*, 510 U.S. 471, 475 (1994). "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block* v. *N.D. ex rel. Bd. of Univ. & School Lands*, 461 U.S. 273, 287 (1983). In other words, "[t]he waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction[.]" *Presidential Gardens Assocs.* v. *U.S. ex rel. Sec'y of Hous. & Urban Dev.*, 175 F.3d 132, 139 (2d Cir. 1999) (discussing *United States* v. *Mitchell*, 463 U.S. 206, 212 (1983)). More specifically, Congress can abrogate sovereign immunity only if it has (i) "unequivocally express[ed] its intent to abrogate the immunity" and (ii) acted under "a valid exercise of power[.]" *Green* v. *Mansour*, 474 U.S. 64, 68 (1985). Sovereign immunity extends to agencies of the United States, including the USPS. *U.S. Postal Serv.* v. *Flamingo Industries (USA) Ltd.*, 540 U.S. 736, 741 (2004); *see also Dolan* v. *U.S. Postal Serv.*, 546 U.S. 481, 483-84 (2006) ("Under the Postal Reorganization Act, … the Postal Service is 'an independent establishment of the executive branch of the Government of the United States[.]'" (citing 39 U.S.C. § 201)).

In *Flamingo*, the United States Supreme Court described the two-step process courts use to determine whether they have subject matter jurisdiction over statutory claims against the federal government or federal agencies. 540 U.S. at 743. At step one, the court asks "whether there is a waiver of sovereign immunity for actions against the [federal agency]." *Id.* If so, the court moves to

step two and determines "whether the substantive prohibitions of the [statute under which the claim is brought] apply to an independent establishment of the Executive Branch of the United States." *Id.* A waiver of immunity "does not result in liability if the substantive law in question is not intended to reach the federal entity." *Id.* at 744.

Congress has, in fact, waived sovereign immunity for actions against the USPS, a point that Defendants do not dispute. (*See* Def. Supp. 1-2 ("Defendants do not dispute that Congress waived USPS's immunity with respect to Plaintiff's VARA claim.")). Section 401(1) of the Postal Reorganization Act ("PRA"), 39 U.S.C. §§ 101-606, provides that "the Postal Service shall have the [power] ... to sue and be sued in its official name[.]" 39 U.S.C. § 401(1). The Supreme Court has held that this "sue-and-be-sued clause waives immunity, and makes the Postal Service amenable to suit, as well as to the incidents of judicial process." *Flamingo*, 540 U.S. at 744. Therefore, although VARA itself does not contain a waiver of sovereign immunity, the PRA does, and thereby authorizes suit against the USPS.

The question, then, is whether VARA's substantive prohibitions apply to the USPS or the United States. Defendants argue that they apply to neither. They begin by noting that no court has directly assessed whether VARA's prohibitions apply to the USPS. (Def. Supp. 2). They then reference the Supreme Court's analysis in *Flamingo*. There, the Court "examined whether the Sherman Act's imposition of liability upon any 'person' may give rise to a claim against USPS." (*Id.* (citing *Flamingo*, 540 U.S. at 744-48)). The Court

observed that "[t]he Sherman Act imposes liability on any 'person,'" which the statute defines to include "corporations and associations existing under or authorized by the laws of either the United States [or of States or foreign governments]." *Flamingo*, 540 U.S. at 744 (citing 15 U.S.C. § 7). Accordingly, the Court held that the Sherman Act's prohibitions do not bind the federal government or its agencies. *Id.* at 744-45. Defendants claim that, just as the Sherman Act does not apply to the federal government, VARA similarly has no binding effect on federal agencies.

Defendants are correct. Under the Copyright Act, 17 U.S.C. §§ 101-810, which incorporates VARA, liability may extend to "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in [VARA]." 17 U.S.C. § 501(a). The term "anyone," as used in the statute, refers to "any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity." *Id.* Notably, it does not reference the federal government or any instrumentality, officer, or employee thereof.

The terms "State" and "instrumentality of a State" as used in the statute refer not to the federal government, but rather to state government entities. "When terms used in a statute are undefined, we give them their ordinary meaning." *Asgrow Seed Co.* v. *Winterboer*, 513 U.S. 179, 187 (1995). Basic principles of statutory construction require that "[t]he words of a statute should be given their normal meaning and effect in the absence of a showing that some other meaning was intended." *United States* v. *Goldberger & Dubin,*

*P.C.*, 935 F.2d 501, 506 (2d Cir. 1991). And the Supreme Court has explained that, "[a]s a rule, a definition which declares what a term means excludes any meaning that is not stated." *Colautti* v. *Franklin*, 439 U.S. 379, 392 n.10 (1979) (internal quotation marks, alterations, and citation omitted). Here, Congress defined "anyone" to include State agencies, but not federal agencies. Had Congress wished to expose federal agencies to liability under VARA, it could easily have defined "anyone" accordingly. It chose not to. This Court cannot — and will not — read "State instrumentality" to refer to federal agencies like the USPS.

Construing "State" and "any instrumentality of a State" to apply to state (but not federal) agencies finds support in Section 511 of the Copyright Act. That statute recites that "[a]ny State, any instrumentality of a State, and any officer or employee of a State … shall not be immune, under the Eleventh Amendment of the Constitution of the United States[.]" 17 U.S.C. § 511. The Supreme Court has squarely held that the Eleventh Amendment "embodies" the "principle of *state* sovereignty[.]" *Fitzpatrick* v. *Bitzer*, 427 U.S. 445, 456 (1976) (emphasis added). It has also explained that, generally, "identical words used in different parts of the same Act are intended to have the same meaning[.]" *Dep't of Revenue of Ore.* v. *ACF Industries, Inc.*, 510 U.S. 332, 333 (1994). That Congress used the same terms in Section 501(a) and in Section 511 — the latter of which deals with state (not federal) immunity — provides further evidence that Congress did not intend to make federal agencies, like the USPS, amenable to suit under VARA.

12

Case law provides still further support. Though few courts, if any, have addressed the narrow question at issue here, numerous courts have analyzed the terms "State" and "instrumentality of a State" in the context of challenges to Congress's abrogation of sovereign immunity. Those courts have consistently understood the issue to be whether the statutes abrogated state immunity, not federal immunity. *See, e.g.*, *Fla. Prepaid Postsecondary Educ. Expense Bd.* v. *College Sav. Bank*, 527 U.S. 627, 632-33 (1999); *Chavez* v. *Arte Publico Press*, 204 F.3d 601, 604-07 (5th Cir. 2000); *Campinha-Bacote* v. *Tenney*, No. 10 Civ. 3165 (RRM) (ALC), 2011 WL 703936, at *2-3 (E.D.N.Y. Jan. 28, 2011). Because the statutory language, the statute's structure, and analogous case law all suggest that Congress did not intend for VARA's prohibitions to apply to the USPS, the Court will not hold otherwise. For that reason, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's VARA claim and declines to address its merits. *See Cornwell*, 666 F. Supp. 2d at 385-86 ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Arar* v. *Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry[.]").

## 2. The Court Lacks Subject Matter Jurisdiction over Plaintiff's APA Claim

The Court next addresses whether it has subject matter jurisdiction over Plaintiff's APA claim.[4]  Defendants seek dismissal on two separate grounds. *First*, they argue that the USPS is exempt from the APA's waiver of sovereign immunity.  (*See* Def. Br. 1 (citing 39 U.S.C. § 410(a))).  *Second*, they assert that the APA "could not provide Plaintiff the remedy he seeks, even if he could proceed under that statute." (*Id.* at 1-2).  The Court is persuaded by Defendants' first argument:  Under the facts presented here, the USPS is exempt from the APA's waiver of immunity; accordingly, the Court lacks subject matter jurisdiction to adjudicate an APA claim.

The APA includes a waiver of sovereign immunity, permitting suit by any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  5 U.S.C. § 702.  However, the statute also states that "nothing herein … confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  *Id.*  In other words, although the APA waives sovereign immunity in some instances, that waiver is not absolute.  Instead, the statute contains an express carve-out where another statute forbids the relief sought.

---

[4]  Though Plaintiff does not reference the APA in his Complaint, the Court construes the Complaint liberally, as it must do in light of Plaintiff's *pro se* status.  Accordingly, the Court considers the viability of an APA claim in this action.

The PRA does just that:  It forbids relief against the USPS.  The PRA states, in relevant part:

> Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5 [the Administrative Procedure Act] shall apply to the exercise of the powers of the Postal Service.

39 U.S.C. § 410(a).  Accordingly, where the USPS is acting outside its granted powers, judicial review under the APA may apply.  *Aid Ass'n for Lutherans* v. *USPS*, 321 F.3d 1166, 1173 (D.C. Cir. 2003).  But where the USPS acts within those powers, the APA provides no waiver of immunity.

The "powers of the Postal Service" are enumerated in Section 401 of the PRA.  They include the power (i) "to construct, operate, lease, and maintain buildings, facilities, equipment, and other improvements on any property owned or controlled by it, including, without limitation, any property or interest therein transferred to it[,]" 39 U.S.C. § 401(6), and (ii) "to accept gifts or donations of services or property, real or personal, as it deems, necessary or convenient in the transaction of its business," *id.* § 401(7).  The question here is whether removing donated murals lies directly within the scope of either enumerated power.

The Court begins by assessing whether the conduct at issue falls within the USPS's power to "maintain buildings, facilities, equipment, and other improvements on any property owned or controlled by it[.]"  39 U.S.C. § 401(6).

Courts have yet to define the word "maintain" as used in Section 401 of the PRA, and the term's meaning is not readily apparent from the context of the statute. The Court therefore looks to dictionary definitions as guides. *See generally United States* v. *Castleman*, 134 S. Ct. 1405, 1420 (2014) (consulting dictionary for assistance in discerning meaning intended by Congress).

Black's Law Dictionary defines "maintain" as "[t]o care for (property) for purposes of operational productivity or appearance[.]" *Maintain*, BLACK'S LAW DICTIONARY (10th ed. 2014). The Merriam Webster Dictionary, for its part, defines "maintain" as "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline." *Maintain*, MERRIAM WEBSTER DICTIONARY (11th ed. 2011). Under either definition, the removal of a mural falls within the scope of the USPS's enumerated powers under Section 401 of the PRA. The decision to remove artwork represents an instance of "car[ing] for (property) for purposes of ... appearance." *Maintain*, BLACK'S LAW DICTIONARY (10th ed. 2014). It may also reasonably be understood as a decision aimed at "preserv[ing]" a space "from ... decline." *Maintain*, MERRIAM WEBSTER DICTIONARY (11th ed. 2011). That is particularly so given the broad discretion that the PRA accords to the USPS in making such decisions. *See Parrish* v. *United States*, 157 F. Supp. 3d 434, 443 (E.D.N.C. 2016) (observing that "[t]he law ... leaves it to the Postal Service to determine the best method for the upkeep of its various facilities").

The removal of a mural is also incidental to the USPS's enumerated power to "lease [or] maintain buildings ... and other improvements." 39 U.S.C.

§ 401(6).  The PRA explicitly grants the USPS authority "to have all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers."  39 U.S.C. § 401(10).  Even if the removal of Plaintiff's mural were not an action to "maintain" a USPS facility, it would at least be incidental to the power to "lease [or] maintain buildings … and other improvements" because, as Plaintiff himself concedes, the mural was removed in the course of the Stuyvesant Post Office's relocation to a new address.  (*See* Dkt. #17 at 5:22-6:1).  That move was lawfully performed in accordance with the USPS's enumerated power, under Section 401(6), to "operate, lease, and maintain buildings … and other improvements."  *Id.* § 401(6).  The removal of Plaintiff's artwork falls within the scope of the USPS's powers, and therefore lies beyond the reach of the APA.  *Aid Ass'n for Lutherans*, 321 F.3d at 1173.[5]

To be sure, "nonreviewability is not to be casually inferred[,]" and "[t]he case against judicial scrutiny of an agency's exercise of discretion must be a compelling one."  *Nat'l Ass'n of Postal Sup'rs* v. *U.S. Postal Serv.*, 602 F.2d 420, 430 (D.C. Cir. 1979).  Here, the case against judicial scrutiny is compelling.

---

[5]  Legislative history further supports the conclusion that the PRA exempts the USPS from liability under the APA.  On August 12, 1970, Congress passed the PRA, a bill intended to modernize and enhance the efficiency of the USPS.  The Postal Reorganization Act, Pub. L. 91-375, 84 Stat. 719 (Aug. 12, 1970) (codified as amended throughout Title 39, United States Code).  An initial draft of the bill read, "except as specified in the bill, all laws relating to public works, contracts, employment, appropriations, budgeting, and any other laws governing agency operations are made inapplicable to the Post Office"; no direct reference was made to the Administrative Procedure Act, and the clause regarding same was added later.  116 Cong. Rec. 21,709 (1972) (Sen. McGee).  The late addition of an explicit reference to the APA evidences Congress's intent to ensure that the USPS was exempt from APA claims.  *See Am. Postal Workers Union, AFL-CIO* v. *U.S. Postal Serv.,* 541 F. Supp. 2d 95, 98 (D.D.C. 2008); *Nat'l Easter Seal Soc'y* v. *USPS*, 656 F.2d 754, 766-68 (D.C. Cir. 1981).

The text of the PRA demonstrates that Congress intended to exempt the USPS, when it acts within its enumerated powers, from exposure to suit under the APA. Any claims Plaintiff might have brought therefore fail as to the USPS.

Though Plaintiff also brings suit against the United States, his APA claim fares no better against this second defendant. Any claim asserted against the United States would still arise from "the exercise of the powers of the Postal Service." 39 U.S.C. § 410(a). Therefore, though the United States generally may be sued under the APA, 5 U.S.C. § 702, Plaintiff's claim against the United States fails for the same reasons as does his claim against the USPS. Plaintiff does not identify any separate conduct by the United States. Instead, the claims against both the United States and the USPS arise out of the same conduct. Because that conduct represents an exercise of the USPS's authorized powers, Plaintiff's APA claim fails as to both Defendants.

### 3. The Court Lacks Subject Matter Jurisdiction over Plaintiff's Claim Under the Federal Tort Claims Act

#### a. Plaintiff Failed to File a "Claim" with the USPS

The Court next turns to Plaintiff's FTCA claim. "The United States, through the FTCA, has made a limited waiver of sovereign immunity." *James* v. *United States*, No. 99 Civ. 4238 (BSJ) (HBP), 2003 WL 22149524, at *4 (S.D.N.Y. Sept. 17, 2003). That is, the United States and its agencies may, under certain circumstances, be sued for tortious actions within the scope of the FTCA. 28 U.S.C. § 1346(b)(1). The FTCA, however, requires a plaintiff to "first present[ ] the claim to the appropriate Federal agency" and have the claim "finally denied by the agency in writing and sent by certified or registered mail."

18

*Id.* § 2675(a).  The claim must be "presented to the 'appropriate federal agency within two years after [the] claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim."  *United States* v. *Kwai Fun Wong*, 135 S. Ct. 1625, 1629 (2015) (quoting 28 U.S.C. § 2401(b)).

Ordinarily, a plaintiff's FTCA claim accrues at the time of injury. *Kronisch* v. *United States*, 150 F.3d 112, 120 (2d Cir. 1998).  The relevant time of injury is calculated from the moment the injured party is made aware of his injury.  *Valdez ex rel Donely* v. *United States*, 518 F.3d 173, 177 (2d Cir. 2008). Here, Plaintiff discovered his injury sometime in 2013 or 2014, but did not file the Complaint until June 2017.  (Compl. 2; Dkt. #1).  Nor did he ever file an administrative claim, as required under the statute.  (Compl. 2-4; Def. Br. 6).

Plaintiff did file certain grievances with the USPS.  From 2014 until 2017, Plaintiff repeatedly communicated — via verbal communication, written letters, and his online USPS.gov account — with both the 23rd Street Post Office and the USPS to discuss the removal of Part II of his mural.  (Compl. 3-4).  In these communications, Plaintiff initially inquired into the whereabouts of his artwork.  (*Id.* at 3).  Once he discovered that location, he then requested permission to display Part II in the Cooper Post Office, alongside Part I.  (*Id.*). Plaintiff's requests were first met with denials; eventually, the USPS stopped responding at all. (*Id.* at 3-4).

Plaintiff's communications do not constitute "claims" for purposes of the FTCA.  *See Mohamed* v. *F.B.I.*, No. 14 Civ. 7615 (CM), 2015 WL 6437369, at *6 (S.D.N.Y. Oct. 21, 2015) ("Letters to an agency that do not contain a demand

for money damages in a sum certain do not constitute presentation of a claim under the FTCA." (internal quotation marks and citation omitted)).  None of Plaintiff's communications with the USPS included any request for money damages.  In fact, the first mention of money damages in this litigation came in Plaintiff's opposition brief.  (Pl. Opp., Ex. 1 at 2-4).  The record is devoid of any written request for damages; instead, it appears that Plaintiff initially sought information from Defendants, and then merely requested that they install Part II of his mural in the Cooper Post Office.  Under binding precedent, such communications cannot be considered "claims" for administrative relief. *Adeleke* v. *United States*, 355 F.3d 144, 153 (2d Cir. 2004).

Plaintiff has therefore failed to exhaust his administrative remedies, and is now time-barred from pursuing administrative relief or any FTCA claims.

**b.    Equitable Tolling Does Not Apply to Plaintiff's Failure to File a Claim with the USPS**

Though Plaintiff himself did not raise the issue, for completeness and in light of Plaintiff's *pro se* status, the Court next examines whether equitable tolling might apply to Plaintiff's failure to file a qualifying claim with the USPS.

Equitable tolling applies in "rare and exceptional circumstances." *Ganley*, 2018 WL 2383533, at *2 (quoting *Walker* v. *Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)).  The Supreme Court has held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States."  *Irwin* v. *Dep't of Veterans Aff.*, 498 U.S. 89, 95-96 (1990).  Accordingly, in suits brought against the United States under a statute waiving immunity, including the FTCA, a court

may "pause the running of a limitations statute" where a party "'has pursued his rights diligently but some extraordinary circumstance' prevents him from meeting a deadline." *Kwai Fun Wong,* 135 S. Ct. at 1631 (quoting *Lozano* v. *Montoya Alvarez,* 134 S. Ct. 1224, 1231-32 (2014)).

Plaintiff has not identified any such "extraordinary circumstance." Though Plaintiff alleges that he has suffered from a form of autism (Compl. 2), that alone is insufficient to show an "extraordinary circumstance" preventing him from diligently pursuing his claims. Plaintiff has failed to allege — and the Court cannot discern — any causal connection between Plaintiff's condition and any lack of diligence in pursuing his claims against the Defendants. Under controlling precedent, mental disability only justifies equitable tolling where a plaintiff "offer[s] a 'particularized description of how [the] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.'" *Bolarinwa* v. *Williams,* 593 F.3d 226, 232 (2d Cir. 2010) (quoting *Boos* v. *Runyon,* 201 F.3d 178, 185 (2d Cir. 2000)). Without more, conclusory allegations regarding a mental disability do not justify equitable tolling. *Boos,* 201 F.3d at 185.

Nor does general ignorance of the requirement to file an administrative claim justify equitable tolling, unless the plaintiff's mental condition causes the failure to understand that requirement. Equitable tolling is only available if a plaintiff's lack of awareness of the limitations period is caused by his diminished cognitive abilities. *See Brown* v. *Parkchester S. Condos.*, 287 F.3d 58, 60 (2d Cir. 2002); *Boos,* 201 F.3d at 185. For equitable tolling to apply

here, Plaintiff must show that his autism prevented him from understanding that he was required to file an administrative claim with the USPS. Nothing in Plaintiff's submissions suggests that is so. To the contrary, the Complaint, as well as Plaintiff's opposition and supplemental briefs, suggest that Plaintiff is capable of understanding complex legal principles, educating himself on the law, and articulating his views with great efficacy. The deficiencies in Plaintiff's Complaint are not alleged to, nor do they appear to, flow from Plaintiff's mental condition. Accordingly, the Court finds that equitable tolling does not apply.

## CONCLUSION

This decision should in no way detract from Plaintiff's considerable artistic talents, or from the communicative power of his installations. To hear his dispute, however, the Court must have subject matter jurisdiction, and it does not. For the reasons set forth above, Defendants' motion to dismiss is GRANTED. Additionally, because any amendments to the pleadings would be similarly futile, the Court does not grant Plaintiff leave to amend his Complaint. *See Cuoco*, 222 F.3d at 112 (upholding denial of leave to amend *pro se* complaint, finding: "Repleading would thus be futile. Such a futile request to replead should be denied.").

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     July 11, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Addison Thompson
255 East 7th Street, Apt. 2
New York, NY 10009